IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*******************************************************************

IN RE:                   :      CHAPTER 13
JAMES JOHN KUBASKO       :
                                :
           Debtor(s)      :      CASE NO. 5-20-00462
*******************************************************************

JAMES JOHN KUBASKO       :
           Movant            :
     vs.                            :
                                :
LACKAWANNA COUNTY TAX CLAIM    :
BUREAU, JEFFERSON TWP., C/O       :
PORTNOFF LAW ASSOCIATES,       :
JEFFERSON TWP. SEWER AUTHORITY,   :
MOOSIC LAKES, PNC BANK         :
INTERNAL REVENUE SERVICE, PA     :
DEPARTMENT OF REVENUE, and      :
CHARLES J. DEHART, III, ESQUIRE     :
           Respondents       :
*******************************************************************

DEBTOR'S MOTION TO APPROVE PRIVATE SALE OF REAL AND PERSONAL
PROPERTY FREE AND CLEAR OF ALL LIENS, CHARGES AND ENCUMBRANCES
*******************************************************************

AND NOW COMES, William Hartzell, Guardian of Person and Estate of James John

Kubasko, the Debtor, and files this Motion for an Order Approving a Private Sale of Real and

Personal Property Free and Clear of all Liens, Charges and Encumbrances:

1.      James John Kubasko (hereinafter the"Debtor") filed a Chapter 13

bankruptcy proceeding with the U.S. Bankruptcy Court for the Middle District of Pennsylvania.

William Hartzell was appointed as Guardian of Person and Estate of James John Kubasko. A

copy of the Order is attached and marked as Exhibit "A".

2.      Charles J. DeHart, III, Esq. was appointed the Chapter 13 Trustee.

3.      On the date that the Petition was filed there existed real property, of the estate

located at 79 W. Shore Dr., Jefferson Twp., PA 18436 along with personal property and fixtures.

4.      The Debtor wishes to sell the property to Thomas S. Boland, Renee A. Boland and Mary Jennifer Frattali for the sum of Five Hundred Ten Thousand ($510,000.00) Dollars.  A copy of the  agreement of sale is attached hereto, made a  part hereof, and  labeled Exhibit "B".

5.      The Respondents named in the above caption, may have a lien(s) on the property or other interests in the property to be sold.

6.      That this Motion to Sell Real and Personal Property Free and Clear of Liens, Charges and Encumbrances has been filed by the Debtor because the offer approximates the fair market value.

7.      The Debtor further requests the Court to allow distribution of the proceeds from the sale of the real estate at settlement, pursuant to the priority of the United States Bankruptcy Court as follows:

a.      Any out-of-pocket expenses advanced by Tullio DeLuca, Esquire in connection with the sale of the aforementioned property, and which have not been reimbursed at the time of settlement along with an attorney fee of $1,488.00;

b.      Any Notarization and/or incidental recording fees associated with the sale of the above property;

c.      Realtors Commission of  6 % percent;

d.      All secured and unsecured claims of James Kubasko shall be paid from the sale of the property.

e.      Any transfer tax which is the responsibility of the seller herein;

f.      Any unpaid real estate taxes and other municipal claims/liens arising from property;

g.      That any other unpaid liens shall attach to the remaining sale proceeds;

h.      Debtor's  exemption if any;

i.      The net sale proceeds in an amount to pay the balance owed to the Chapter 13 Trustee, if any, from the above sale shall be paid to Jack N. Zaharopoulos, Esq., Chapter 13 Trustee, for distribution to creditors in accordance with the Debtor's confirmed Plan

8.     The Debtor shall be allowed to escrow funds at closing for potential capital gains tax liability as may be needed.

9.     The Debtor request the Court to issue a date by which responses, if any, objecting to the sale of real property free and clear of liens, charges and encumbrances may be filed, and to grant the requested relief, to wit, to hold the sale of the aforementioned real property free and clear of all liens, charges and encumbrances.

WHEREFORE, William Hartzell, Guardian of Person and Estate of James John Kubasko, the Debtor respectfully requests that the Movant's Motion to approve Private Sale of Real and Personal Property located at 79 W. Shore Dr., Jefferson Twp., PA 18436, be hereby approved and an Order issued authorizing the Debtor to sell the above real and personal property free and clear of all liens, charges and encumbrances to Thomas S. Boland, Renee A. Boland and Mary Jennifer Frattali with normal and customary closing costs paid from the sale proceeds as indicated above, less Debtors' exemption. Debtor shall be allowed to escrow funds at closing for a potential capital tax gain liability.

Respectfully submitted,

Tullio DeLuca, Esq.
Attorney for Debtor
381 N. 9th Avenue
Scranton, PA 18504
(570) 347-7764

IN RE: **JAMES KUBASKO**       :      IN THE COURT OF COMMON PLEAS
AN INCAPACITATED PERSON    :      OF LACKAWANNA COUNTY
                                           :
                                           : ORPHANS' COURT DIVISION
                                           :
                                           : NO. 512 of 2020
                                           :

### FINAL DECREE

AND NOW, this _29th_ day of June, 2021, based upon evidence and the record, this Court

finds, by clear and convincing evidence, that **James Kubasko** is adjudged an incapacitated

person.

This court further accepts the opinion of Richard Fischbein M.D. as to the diagnoses of a

mild neurocognitive disorder which impairs **James Kubasko's** capacity to receive and evaluate

information effectively and to make and communicate decisions concerning management of his

financial affairs or to meet essential requirements for his health and safety.

1.    The alleged incapacitated is in imminent risk to his finances as he is unable to

        manage his finances and responsibly tender payment for services provided by third

        parties.

2.    William Rolland Hartzell, 9714 Poplarwood Court, Orlando Florida 32825 is appointed

        as Permanent Plenary Guardian of Person and Estate for **James Kubasko.** The

        Guardian shall file reports on the financial and the social, medical, and other relevant

        conditions and other relevant conditions as required by 20 Pa.C.S.A. § 5521(c).

CLERK OF ORPHANS' COURT
2021 JUN 30  A  9: 23
REGISTER OF WILLS
FRANCES M. KOVALESKI

0846  2687

The Guardian (shall) (shall not) post a Court approved bond in the amount of $___0___, and shall file reports within ninety (90) days from the date of this Final Decree and annually thereafter on the anniversary date of this Final Decree.

All financial institutions, savings and loans, credit unions, and brokerages, shall grant to William Hartzell as Guardian of the Estate access to any and all assets, records, and accounts maintained for the benefit of **James Kubasko**, and William Hartzell shall be entitled to transfer, retitle, withdraw, or otherwise exercise dominion and control over any and all said assets, records, and accounts.

The Guardian is required to reimburse The Advocacy Alliance, Inc. for any expense incurred wherein The Advocacy Alliance, Inc. paid any bills accrued by James Kubasko which were in excess of the liquid funds available at the time of expenditure.

Any Power of Attorney executed by **James Kubasko** prior to the date of this Order or executed after the date of this Order shall not be valid unless approved the Court.

The aforementioned judicial determinations have taken into consideration the matters required by 20 Pa.C.S.A. § 5512.1. The Court adopts as its own the Findings of Fact and Conclusions of Law filed by the Petitioner.

**James Kubasko**, the adjudicated incapacitated person is advised and informed of the right to seek reconsideration of this Order pursuant to Rule 8.2 of the Pennsylvania Orphans' Court Rules and the right to appeal this Order within 30 days from the date of this Order by filing a Notice of Appeal with the Clerk of the Orphans' Court. **James Kubasko** may also petition the Court at any time to review, modify, or terminate the guardianship due to a change in circumstances. **James Kubasko** has a right to be represented by an attorney to file a motion for reconsideration, an appeal, or to seek modification or termination of this guardianship. If the assistance of counsel is

2

00846 2688

needed and **James Kubasko** cannot afford an attorney, an attorney will be appointed to represent **James Kubasko** free of charge.

Counsel for the petitioner is directed to serve upon counsel for **James Kubasko** a copy of this Order within five (5) days and file a Proof of Service.

BY THE COURT

MUNLEY, T.J.

, J.

3

0846 2689

Authentisign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE    ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

**BUYER(S):** Thomas S Boland, Renee A Boland, Mary Jennifer Frattali

**SELLER(S):** James J Kubasko Jr., By & Through his Guardian William R Hartzell

**BUYER'S MAILING ADDRESS:**
30 White Tail Dr, Dallas, PA 18612-1551

**SELLER'S MAILING ADDRESS:**
79 West Shore Dr, Jefferson Twp, Pa 18436

## PROPERTY

ADDRESS (including postal city) 79 W Shore Dr

Jefferson Twp          ZIP 18436                ,

in the municipality of _____ Jefferson Township _____, County of Lackawanna _____,

in the School District of _____ North Pocono _____, in the Commonwealth of Pennsylvania.

Tax ID #(s): 13802010003                                                        and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): 13802010003; 1576/0168

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

[ ] **No Business Relationship** (Buyer is not represented by a broker)

Broker (Company) CLASSIC PROPERTIES

Company License # RB065379
Company Address 324 S. State St., Clarks Summit, PA 18411

Company Phone (570)587-7000
Company Fax (570)586-8404
Broker is (check only one):
[ ] Buyer Agent (Broker represents Buyer only)
[X] Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) Margaret Hennemuth

State License # RS315158
Direct Phone(s) (570)587-7000
Cell Phone(s) (570)499-2290
Email hennemuthpeggy@gmail.com
Licensee(s) is (check only one):
[ ] Buyer Agent (all company licensees represent Buyer)
[ ] Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
[X] Dual Agent (See Dual and/or Designated Agent box below)

[ ] Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

[ ] **No Business Relationship** (Seller is not represented by a broker)

Broker (Company) CLASSIC PROPERTIES

Company License # RB065379
Company Address 324 S. State St., Clarks Summit, PA 18411

Company Phone (570)587-7000
Company Fax (570)586-8404
Broker is (check only one):
[ ] Seller Agent (Broker represents Seller only)
[X] Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) Margaret Hennemuth
Margaret Hennemuth
State License # RS313158
Direct Phone(s) (570)587-7000
Cell Phone(s) (570)499-2290
Email hennemuthpeggy@gmail.com
Licensee(s) is (check only one):
[ ] Seller Agent (all company licensees represent Seller)
[ ] Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
[X] Dual Agent (See Dual and/or Designated Agent box below)

[ ] Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: _JSB_ _RAB_          ASR Page 1 of 14          Seller Initials: _WRH_

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2020
rev. 5/20; rel. 7/20

CLASSIC PROPERTIES, 324 S. State St. Clarks Summit PA 18411                     Phone: (570)587-7000          Fax: (570)586-8404          79 W Shore Dr/
Margaret Hennemuth          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Authentisign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

Authentisign ID: 97340C34-634D-4305-833E-D51287EEA703

1. **By this Agreement**, dated September 20, 2021
   Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**
   (A) Purchase Price $ 510,000.00
       (Five Hundred Ten Thousand
                                                                   U.S. Dollars), to be paid by Buyer as follows:
       1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
          if not included with this Agreement:
       2. Additional Deposit within _____ days of the Execution Date:        $ _____ 10,000.00
       3.                                                                    $ _____
       Remaining balance will be paid at settlement.
   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
       within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
       sonal check.
   (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here:
       _____ )
       who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or
       termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations
       of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
       Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**
   Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward
   Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
   approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (4-14)**
   (A) Settlement Date is          30 days after the courts approval          , or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
       Buyer and Seller agree otherwise.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
       current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer
       fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will
       pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
       Delinquent Moosic Lakes Association Fees, paid by seller
   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
       1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
       2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December
          31. School tax bills for all other school districts are for the period from July 1 to June 30.
   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
       _____
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
       _____
   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
       broom clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
       is subject to a lease.
   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
       assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement.
       Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer
       will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this
       Agreement.
       ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

5. **DATES/TIME IS OF THE ESSENCE (1-10)**
   (A) Written acceptance of all parties will be on or before: September 21, 2021
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
       essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by
       signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, exclud-
       ing the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be
       initialed and dated.
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
       ment of the parties.
   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
       and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
       to all parties, except where restricted by law.

Buyer Initials: _JSB_ / _RAB_                ASR Page 2 of 14                          Seller Initials: _WRH_
                                   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          79 W Shore Dr/

65  **6.  ZONING (4-14)**
66  Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdi-
67  vidable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
68  voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
69  Zoning Classification, as set forth in the local zoning ordinance: Residential

70  **7.  FIXTURES AND PERSONAL PROPERTY (1-20)**
71  (A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be
72  regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating
73  what items will be included or excluded in this sale.
74  (B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
75  and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting
76  fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric
77  animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television
78  and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps;
79  storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; win-
80  dow covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments);
81  built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking
82  fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane
83  tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: _____
84  _____
85  _____
86  (C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/
87  vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
88  _____
89  (D) EXCLUDED fixtures and items: _____
90  _____

91  **8.  MORTGAGE CONTINGENCY (6-19)**
92  [X]  WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
93  may include an appraisal contingency.
94  [ ]  ELECTED.
95  (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| 96/97 Loan Amount $ _____ | Loan Amount $ _____ |
| 98 Minimum Term _____ years | Minimum Term _____ years |
| 99 Type of mortgage _____ | Type of mortgage _____ |
| 100/101 For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| 102/103 Mortgage lender _____ | Mortgage lender _____ |
| 104/105/106 Interest rate _____%; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____%. | Interest rate _____%; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____%. |
| 107/108/109/110 Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed _____% (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed _____% (0% if not specified) of the mortgage loan. |

111  (B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage applica-
112  tion(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case
113  no later than _____.
114  1.  If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mort-
115  gage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right
116  to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's
117  mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to
118  make a good faith effort to obtain mortgage financing.
119  2.  Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demon-
120  strating lender's conditional or outright approval of Buyer's mortgage application(s):
121  a.  Does not satisfy the terms of Paragraph 8(A), OR
122  b.  Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
123  received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in
124  writing by the mortgage lender(s) within    7    DAYS after the date indicated in Paragraph 8(B), or any extension there-
125  of, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming
126  employment).
127  3.  If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,

129    all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
130    will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this
131    Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
132    for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
133    (3) Appraisal fees and charges paid in advance to mortgage lender(s).

134  (C)  The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
135    LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a spe-
136    cific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan.
137    The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be
138    higher or lower than the Purchase Price and/or market price of the property.

139  (D)  The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
140    the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
141    Buyer will do so at least    15    days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
142    by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
143    lender(s) to make the above mortgage term(s) available to Buyer.

144  (E)  Within       days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
145    cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
146    identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
147    otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
148    Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
149    application.

150  (F)  Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/
151    or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
152    ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
153    reject, or refuse to approve or issue, a mortgage loan commitment.

154  (G)  If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
155    repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within    5
156    DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
157    expense.

158     1.  If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
159       agrees to the RELEASE in Paragraph 28 of this Agreement.

160     2.  If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within    5
161       DAYS, notify Seller of Buyer's choice to:
162       a.  Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
163          will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the
164          Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
165       b.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
166          Paragraph 26 of this Agreement.
167       If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice
168       to Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and
169       agree to the RELEASE in Paragraph 28 of this Agreement.

170                             **FHA/VA, IF APPLICABLE**

171  (H)  It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
172    chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
173    has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
174    Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
175    $              (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
176    proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
177    is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
178    not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
179    Property are acceptable.

180    Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration
181    Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters
182    or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years,
183    or both."

184  (I)  U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
185    ☐  Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
186       getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
187       FHA will not perform a home inspection nor guarantee the price or condition of the Home.
188    ☐  Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(B))
189       and Buyer's acceptance of additional required repairs as required by the lender.

190  (J)  Certification We the undersigned, Seller's and Buyer's party to this transaction each certify that the terms of this contract for
191    purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
192    connection with this transaction is attached to this Agreement.

193   Buyer Initials: JSB BGB          **ASR Page 4 of 14**          Seller Initials: WRH

Authentisign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

194 9. **CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
195 If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the
196 Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change
197 in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against
198 Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to
199 purchase.

200 10. **SELLER REPRESENTATIONS (1-20)**
201 (A) Status of Water
202 Seller represents that the Property is served by:
203 ☐ Public Water  ☐ Community Water  ☐ On-site Water  ☐ None  ☐ Well needed
204 (B) Status of Sewer
205 1. Seller represents that the Property is served by:
206 ☒ Public Sewer  ☐ Community Sewage Disposal System  ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
207 ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)  ☐ Holding Tank (see Sewage Notice 3)
208 ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
209 ☐ None (see Sewage Notice 1)  ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
210
211 2. Notices Pursuant to the Pennsylvania Sewage Facilities Act
212 Notice 1: There is no currently existing community sewage system available for the subject property. Section 7 of the
213 Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
214 repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
215 permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
216 administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
217 local agency charged with administering the Act will be the municipality where the Property is located or that municipality
218 working cooperatively with others.
219 Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption
220 provisions of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required
221 before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage
222 system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and
223 site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by
224 the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance
225 which occurs as a result.
226 Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a
227 water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another
228 site. Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the
229 tank from the date of its installation or December 14, 1995, whichever is later.
230 Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-
231 tance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
232 provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
233 supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hor-
234 izontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
235 absorption area shall be 100 feet.
236 Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage
237 facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until
238 the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations
239 promulgated thereunder.

240 (C) Historic Preservation
241 Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
242 _____

243 (D) Land Use Restrictions
244 1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
245 following Act(s) (see Notices Regarding Land Use Restrictions below):
246 ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. §901 et seq.)
247 ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
248 ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
249 ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
250 ☐ Other _____
251 2. Notices Regarding Land Use Restrictions
252 a. Pennsylvania Right-To-Farm Act: The property you are buying may be located in an area where agricultural operations
253 take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
254 circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
255 b. Clean and Green Program: Properties enrolled in the Clean and Green Program receive preferential property tax assess-
256 ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
257 of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
258 may result in the future as a result of any change in use of the Property or the land from which it is being separated.

259 Buyer Initials: [JSB] [JAB]  ASR Page 5 of 14  Seller Initials: [WRH]

AuthentiSign ID: 482E3D67-02F9-49E5-8E16-95186C021DAC

AuthentiSign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

260     c.   **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
261         supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open
262         space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that
263         the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific
264         termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply
265         from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the
266         Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
267     d.   **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are
268         environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the
269         land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer
270         has been advised of the need to determine the restrictions on development of the Property and the term of any contract now
271         in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.
272   (E)  **Real Estate Seller Disclosure Law**
273       Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real
274       estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential
275       real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of
276       an interest in real property where NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING
277       UNITS are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures
278       regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale
279       of condominium and cooperative interests.
280   (F)  **Public and/or Private Assessments**
281     1.   Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner asso-
282        ciation assessments have been made against the Property which remain unpaid, and that no notice by any government or public
283        authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to
284        violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition
285        that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
286
287     2.   Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
288
289   (G)  **Highway Occupancy Permit**
290       Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.
291   (H)  **Internet of Things (IoT) Devices**
292     1.   The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data
293        stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things
294        (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.
295     2.   On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property
296        and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to
297        cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be
298        disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or
299        anyone on Seller's behalf to access any IoT devices remaining on the Property.
300     3.   Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the
301        Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously
302        provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes,
303        updating network settings and submitting change of ownership and contact information to device manufacturers and service
304        providers.
305     4.   This paragraph will survive settlement.
306 **11. WAIVER OF CONTINGENCIES (9-05)**
307     If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental condi-
308     tions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exer-
309     cise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts
310     the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
311 **12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**
312   (A)  **Rights and Responsibilities**
313     1.   Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to
314        surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate
315        licensee(s) may attend any inspections.
316     2.   Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the
317        condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived
318        by any other provision of this Agreement.
319     3.   Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
320     4.   All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for
321        Buyer.
322     5.   Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared.
323        Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

324 Buyer Initials: [JSB] [MRB]         ASR Page 6 of 14          Seller Initials: [WRH]

Authentisign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

AuthentiSign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

325 (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
326 "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
327 licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
328 inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D)
329 for Notices Regarding Property and Environmental Inspections)

330 (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
331 Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
332 a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

333 **Home/Property Inspections and Environmental Hazards (mold, etc.)**

334 Elected _____ Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior
335 doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances;
336 electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetra-
337 tion; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environ-
338 mental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer
339 may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the
340 home inspection must be performed by a full member in good standing of a national home inspection association,
341 or a person supervised by a full member of a national home inspection association, in accordance with the ethical
342 standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or
343 architect. (See Notices Regarding Property & Environmental Inspections)

344 **Wood Infestation**

345 Elected _____ Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a
346 wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided
347 by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
348 gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be
349 limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
350 reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesti-
351 cide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
352 may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
353 structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

354 **Deeds, Restrictions and Zoning**

355 Elected _____ Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-
356 nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
357 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking)
358 is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
359

360 **Water Service**

361 Elected _____ Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise
362 qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
363 locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
364 condition, at Seller's expense, prior to settlement.

Waived

365 **Radon**

366 Elected _____ Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection
367 Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02
368 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground
369 by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas
370 can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a
371 house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any
372 person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department
373 of Environmental Protection. Information about radon and about certified testing or mitigation firms is available
374 through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State
375 Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

376 **On-lot Sewage (If Applicable)**

377 Elected _____ Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic
378 load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's
379 expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water
380 needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense,
381 prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection
382 Contingency.

383 **Property and Flood Insurance**

384 Elected _____ Buyer may determine the insurability of the Property by making application for property and casualty insurance
385 for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate
386 with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone,
387 Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more
388 prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood

389 Buyer Initials: [JSB] [man] ASR Page 7 of 14 Seller Initials: [WRH]



AuthentiSign ID: 4B2E3D67-02F9-49E5-8E15-95186C021DAC

AuthentiSign ID: 95B0A1A2-33A9-4E88-85AF-5264E8DAD482

| 390 | | insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more |
| 391 | | flood insurance agents regarding the need for flood insurance and possible premium increases. |
| 392 | | **Property Boundaries** |
| 393 | Elected | Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal |
| 394 | _____ | description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property |
| 395 | | surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural |
| 396 | | or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen- |
| 397 | | tations of size of property are approximations only and may be inaccurate. |
| 398 | | **Lead-Based Paint Hazards (For Properties built prior to 1978 only)** |
| 399 | Elected | Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct |
| 400 | _____ | a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint |
| 401 | | hazards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard |
| 402 | | Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved |
| 403 | | lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a |
| 404 | | separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and |
| 405 | | any lead-based paint records regarding the Property. |
| 406 | | **Other** |
| 407 | Elected | _____ Waived |
| 408 | | |
| 409 | | The Inspections elected above do not apply to the following existing conditions and/or items: _____ |
| 410 | | _____ |
| 411 | | _____ |

393–394 Waived JSB IAM

395–397 [initials]

399–400 Waived JSB IAM

401–402 [initials]

(D) **Notices Regarding Property & Environmental Inspections**
1. Exterior Building Materials: Poor or improper installation of exterior building materials may result in moisture penetrating the surface of a structure where it may cause mold and damage to the building's frame.
2. Asbestos: Asbestos is linked with several adverse health effects, including various forms of cancer.
3. Environmental Hazards: The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly.
4. Wetlands: Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.
5. Mold, Fungi and Indoor Air Quality: Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores, pollen and viruses) have been associated with allergic responses.
6. Additional Information: Inquiries or requests for more information about asbestos and other hazardous substances can be directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by calling 1-877-724-3258.

13. **INSPECTION CONTINGENCY (10-18)**
   (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected in Paragraph 12(C).
   (B) Within the stated Contingency Period and as the result of any Inspection elected in Paragraph 12(C), except as stated in Paragraph 13(C):
      1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL present all Report(s) in their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR
      2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in their entirety to Seller and terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR
      3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.
      The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
         a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation Period. During the Negotiation Period:
            (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
            (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve- ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
            If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable WRH

454 Buyer Initials: JSB / IAM ASR Page 8 of 14 Seller Initials: WRH

Authentisign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

455 written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
456 Negotiation Period ends.

457     b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within
458     _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:

459         (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
460         Agreement, OR

461         (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
462         of Paragraph 26 of this Agreement.

463     If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement
464 by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree
465 to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation
466 Period.

467 (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
468     days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to,
469     the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected
470     completion date for corrective measures. Within   5   DAYS of receiving Seller's Proposal, or if no Proposal is provided within
471     the stated time, Buyer will notify Seller in writing of Buyer's choice to:

472     1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
473     2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
474        Paragraph 26 of this Agreement, OR
475     3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by
476        any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time
477        required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the
478        Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct
479        the defects, Buyer may, within   5   DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all
480        deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

481     If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to
482 Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

483 **14. TITLES, SURVEYS AND COSTS (6-20)**

484 (A) Within \_\_\_\_\_ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company
485     for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report
486     to Seller.

487 (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different
488     from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance
489     policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options.
490     Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an
491     owner's title insurance policy.

492 (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
493     (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
494     and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

495 (D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
496     tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
497     required by the mortgage lender will be obtained and paid for by Buyer.

498 (E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the reg-
499     ular rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions;
500     historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
501     ground; easements of record; and privileges or rights of public service companies, if any.

502 (F) If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or
503     any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to,
504     Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice
505     of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all
506     liens and encumbrances against the Property.

507 (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates,
508     as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned
509     to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition
510     precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit
511     monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for
512     any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those
513     items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

514 (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
515     about the status of those rights unless indicated elsewhere in this Agreement.

516     ☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.

517 Buyer Initials: [JSB mas]           ASR Page 9 of 14           Seller Initials: [WRH]



Authentisign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

518    (I)   **COAL NOTICE (Where Applicable)**
519       THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-
520       NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-
521       PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND
522       ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of
523       the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence
524       resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-
525       ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
526       of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,
527       1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.
528    (J)   The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
529       _____
530    (K) 1.   This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
531       ☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.
532      2.   **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
533       Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that
534       is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-
535       gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
536       whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
537       other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
538       disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,
539       the Act gives certain rights and protections to buyers.
540 **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**
541    (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
542       received after Seller has signed this Agreement and before settlement, Seller will within ____5 DAYS of receiving the notices and/
543       or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
544      1.   Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
545       notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
546      2.   Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
547       within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within ____5 DAYS
548       that Buyer will:
549       a.   Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
550         Paragraph 28 of this Agreement, OR
551       b.   Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
552         Paragraph 26 of this Agreement.
553       If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice
554       to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
555    (B) If required by law, within ____30 DAYS from the Execution Date of this Agreement, but in no case later than ____15 DAYS prior
556       Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
557       of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of
558       the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to
559       Seller.
560      1.   Within ____5 DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
561       copy of the notice to Buyer and notify Buyer in writing that Seller will:
562       a.   Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/
563         improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
564       b.   Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
565         notify Seller in writing within ____5 DAYS that Buyer will:
566         (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
567           28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
568         (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
569           of Paragraph 26 of this Agreement.
570         If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by writ-
571         ten notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this
572         Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the
573         notice provided by the municipality.
574      2.   If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,
575       Seller will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 15(B)(2) will survive
576       settlement.
577 **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**
578    (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
579       ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407
580       of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of
581       the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

582   Buyer Initials: [JSB] [BAB]      ASR Page 10 of 14      Seller Initials: [WRSH]

Authentisign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

583 ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
584 the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the decla-
585 ration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the
586 provisions set forth in Section 5407(a) of the Act.
587 (B) THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM
588 OR A PLANNED COMMUNITY:
589 If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
590 Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
591 this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
592 Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
593 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
594 (C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A
595 PLANNED COMMUNITY:
596 1. Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
597 a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
598 that the association is required to provide these documents within 10 days of Seller's request.
599 2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
600 for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
601 association in the Certificate.
602 3. The Act provides that Buyer may declare this Agreement VOID in any time before Buyer receives the association documents
603 and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon
604 Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of
605 this Agreement.
606 4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
607 reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
608 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
609 cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
610 Appraisal fees and charges paid in advance to mortgage lender.
611 **17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
612 In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
613 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for
614 the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of
615 the property and result in a change in property tax.
616 **18. MAINTENANCE AND RISK OF LOSS (1-14)**
617 (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
618 specifically listed in this Agreement in its present condition, normal wear and tear excepted.
619 (B) If any part of the Property included in the sale fails before settlement, Seller will:
620 1. Repair or replace that part of the Property before settlement, OR
621 2. Provide prompt written notice to Buyer of Seller's decision to:
622 a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
623 if any, OR
624 b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
625 part of the Property.
626 3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or If Seller fails
627 to notify Buyer of Seller's choice, Buyer will notify Seller in writing within ___5___ DAYS or before Settlement Date, whichever
628 is earlier, that Buyer will:
629 a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
630 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
631 Paragraph 26 of this Agreement.
632 If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice
633 to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
634 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
635 replaced prior to settlement, Buyer will:
636 1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
637 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
638 Paragraph 26 of this Agreement.
639 **19. HOME WARRANTIES (1-10)**
640 At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller
641 understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any
642 pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or
643 certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends
644 a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

645 Buyer Initials: [JSB] [MAB]                    ASR Page 11 of 14                    Seller Initials: [WRH]

Authentisign ID: 482E3D67-02F9-49E5-8E1E-95186C021DAC

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5284E8DAD482

646 20. **RECORDING (9-05)**
647 This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
648 causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
649 21. **ASSIGNMENT (1-10)**
650 This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assign-
651 able, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless
652 otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
653 22. **GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
654 (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
655 laws of the Commonwealth of Pennsylvania.
656 (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance
657 by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of
658 Pennsylvania.
659 23. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
660 The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
661 Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
662 real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
663 chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
664 to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S.
665 taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/
666 Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to
667 withhold, you may be held liable for the tax.
668 24. **NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
669 The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
670 for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal
671 police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
672 erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.
673 25. **REPRESENTATIONS (1-10)**
674 (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licens-
675 ees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement.
676 This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants,
677 representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not
678 be altered, amended, changed or modified except in writing executed by the parties.
679 (B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property spe-
680 cifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property
681 IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
682 Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the
683 structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of
684 conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems
685 contained therein.
686 (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
687 (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.
688 26. **DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**
689 (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
690 deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
691 Termination of this Agreement may occur for other reasons giving rise to claims by Buyer or Seller for the deposit monies.
692 (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
693 determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
694     1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
695     agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
696     2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
697     Broker how to distribute some or all of the deposit monies.
698     3. According to the terms of a final order of court.
699     4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
700     deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))
701 (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not
702 specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
703 Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
704 request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the
705 subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of
706 Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement
707 between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of
708 the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution
709 of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties
710 maintain their legal rights to pursue litigation even after a distribution is made.

711 Buyer Initials: [JSB] [MB]      ASR Page 12 of 14      Seller Initials: [WRH] _____

AuthentiSign ID: 482E3D67-02F9-49E5-8E15-95186C021DAC

AuthentiSign ID: 95B0A1A2-33A9-4E88-05AF-5264E8DAD482

712 (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
713 law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
714 monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
715 (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
716     1.   Fail to make any additional payments as specified in Paragraph 2, OR
717     2.   Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
718        legal or financial status, OR
719     3.   Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
720 (F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
721     1.   On account of purchase price, OR
722     2.   As monies to be applied to Seller's damages, OR
723     3.   As liquidated damages for such default.
724 (G) [X] SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUI-
725     DATED DAMAGES.
726 (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
727     and Seller are released from further liability or obligation and this Agreement is VOID.
728 (I) Brokers and licensees are not responsible for unpaid deposits.

729 **27. MEDIATION (7-20)**
730 Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
731 to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
732 Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
733 tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
734 equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the comple-
735 tion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens by Buyer
736 to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all proceedings
737 shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to the prevailing
738 party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement reached through
739 mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will
740 survive settlement.

741 **28. RELEASE (9-05)**
742 Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any
743 OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or
744 through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and
745 all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects,
746 radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage
747 disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in
748 default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer
749 of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

750 **29. REAL ESTATE RECOVERY FUND (4-18)**
751 A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
752 estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
753 unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
754 3658.

755 **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
756 (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
757     and Closing Disclosure(s) upon receipt.
758 (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
759     satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant
760     to Paragraph 16. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
761     directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or
762     allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if
763     any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the
764     Seller, unless otherwise agreed to by the parties.

765 **31. HEADINGS (4-14)**
766 The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
767 sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

768 Buyer Initials: [JSB] [BAB]      ASR Page 13 of 14      Seller Initials: [WRH]

[ASR]

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com      79 W Shore Dr/

769  32. SPECIAL CLAUSES (1-10)
770  (A) The following are attached to and made part of this Agreement if checked:
771  ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
772  ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
773  ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
774  ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
775  ☐ Appraisal Contingency Addendum (PAR Form ACA)
776  ☐ Short Sale Addendum (PAR Form SHS)
777  _____
778  _____
779  _____
780  (B) Additional Terms: Property is subject to the approval by the Orphans Court of Lackawanna County & US Bankruptcy Court
781  of Northeastern Pennsylvania....
782
783
784
785
786
787
788
789
790
791
792
793
794
795  Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

796  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
797  together shall constitute one and the same Agreement of the Parties.

798  NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Parties to this transaction are
799  advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

800  Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all
801  parties, constitutes acceptance by the parties.

802  Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

803  Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

804  Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
805  before signing this Agreement.

806  Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
807  also received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

808  BUYER  *Thomas S Boland* _____  DATE  09/20/2021
          Thomas S Boland
809  BUYER  *Renee A Saccino* _____  DATE  09/20/2021
          Renee A Saccino
810  BUYER  _____  DATE  09/21/2021
          Mary Jennifer Frattali
811  Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
812  Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

813  SELLER _____  DATE _____
          James J Kubasko Jr.
814  SELLER _____  DATE  09/22/2021
          By & Through his Guardian William R Hartsell
          William R Hartsell Guardian
815  SELLER _____  DATE _____

Case 5:20-bk-00462-MJC    Doc 103    Filed 10/15/21    Entered 10/15/21 16:51:45    Desc
Main Document      Page 20 of 39

Authentisign ID: 95B0A1A2-33A9-4E88-95A7-5264E8DAD482

**SELLER'S PROPERTY DISCLOSURE STATEMENT**  SPD

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1 PROPERTY 79 West Shore Dr  Jefferson Twp. Pa 18436, ,  18436

2 SELLER James J Kubasko Jr., By & Through his Guardian William R Hartzell

3  **INFORMATION REGARDING THE REAL ESTATE SELLER DISCLOSURE LAW**

4 The Real Estate Seller Disclosure Law (68 P.S. §7301, et seq.) requires that before an agreement of sale is signed, the seller in a residential
5 real estate transfer must disclose all known **material defects** about the property being sold that are not readily observable. **A material defect**
6 is a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or
7 that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is at or beyond the end
8 of its normal useful life is not by itself a material defect.

9 This property disclosure statement ("Statement") includes disclosures beyond the basic requirements of the Law and is designed to assist
10 Seller in complying with disclosure requirements and to assist Buyer in evaluating the property being considered. Sellers who wish to see
11 or use the basic disclosure form can find the form on the website of the Pennsylvania State Real Estate Commission. Neither this Statement
12 nor the basic disclosure form limits Seller's obligation to disclose a material defect.

13 This Statement discloses Seller's knowledge of the condition of the Property as of the date signed by Seller and **is not a substitute for any**
14 **inspections or warranties** that Buyer may wish to obtain. **This Statement is not a warranty of any kind by Seller or a warranty or rep-**
15 **resentation by any listing real estate broker, any selling real estate broker, or their licensees.** Buyer is encouraged to address concerns
16 about the condition of the Property that may not be included in this Statement.

17 **The Law provides exceptions (listed below) where a property disclosure statement does not have to be completed. All other sellers**
18 **are obligated to complete a property disclosure statement, even if they do not occupy or have never occupied the Property.**

19  1. Transfers by a fiduciary during the administration of a decedent estate, guardianship, conservatorship or trust.
20  2. Transfers as a result of a court order.
21  3. Transfers to a mortgage lender that results from a buyer's default and subsequent foreclosure sales that result from default.
22  4. Transfers from a co-owner to one or more other co-owners.
23  5. Transfers made to a spouse or direct descendant.
24  6. Transfers between spouses as a result of divorce, legal separation or property settlement.
25  7. Transfers by a corporation, partnership or other association to its shareholders, partners or other equity owners as part of a plan of
26    liquidation.
27  8. Transfers of a property to be demolished or converted to non-residential use.
28  9. Transfers of unimproved real property.
29  10. Transfers of new construction that has never been occupied and:
30    a. The buyer has received a one-year warranty covering the construction;
31    b. The building has been inspected for compliance with the applicable building code or, if none, a nationally recognized model
32      building code; and
33    c. A certificate of occupancy or a certificate of code compliance has been issued for the dwelling.

34  **COMMON LAW DUTY TO DISCLOSE**
35 Although the provisions of the Real Estate Seller Disclosure Law exclude some transfers from the requirement of completing a disclo-
36 sure statement, the Law does not excuse the seller's common law duty to disclose any known material defect(s) of the Property in order
37 to avoid fraud, misrepresentation or deceit in the transaction. **This duty continues until the date of settlement.**

38  **EXECUTOR, ADMINISTRATOR, TRUSTEE SIGNATURE BLOCK**
39 According to the provisions of the Real Estate Seller Disclosure Law, the undersigned executor, administrator or trustee is not required
40 to fill out a Seller's Property Disclosure Statement. **The executor, administrator or trustee, must, however, disclose any known**
41 **material defect(s) of the Property.**
42  DATE _____

43 Seller's Initials _____ Date 09/16/2021  SPD Page 1 of 11  Buyer's Initials TSB / RAP Date 09/20/2021

**Pennsylvania Association of Realtors®**  COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2021
rev. 3/21; rel. 7/21
CLASSIC PROPERTIES, 334 S. State St, Clarks Summit PA 18411  Phone: (570)587-7000  Fax: (570)586-8404  James J Kubasko Jr.
Margaret Hennemuth  Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

44 **Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the
45 Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

46 **1. SELLER'S EXPERTISE**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 47 (A) Does Seller possess expertise in contracting, engineering, architecture, environmental assessment or | | | | | |
| 48 other areas related to the construction and conditions of the Property and its improvements? | A | | | | |
| 49 (B) Is Seller the landlord for the Property? | B | | | | |
| 50 (C) Is Seller a real estate licensee? | C | | | | |

51 **Explain any "yes" answers in Section 1:** _____
52

53 **2. OWNERSHIP/OCCUPANCY**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 54 (A) Occupancy | | | | | |
| 55   1. When was the Property most recently occupied? _____ | A1 | | | | |
| 56   2. By how many people? _____ | A2 | | | | |
| 57   3. Was Seller the most recent occupant? | A3 | | | | |
| 58   4. If "no," when did Seller most recently occupy the Property? _____ | A4 | | | | |
| 59 (B) Role of Individual Completing This Disclosure. Is the individual completing this form: | | | | | |
| 60   1. The owner | B1 | | | | |
| 61   2. The executor or administrator | B2 | | | | |
| 62   3. The trustee | B3 | | | | |
| 63   4. An individual holding power of attorney | B4 | | | | |
| 64 (C) When was the Property acquired? _____ | C | | | | |

65 (D) List any animals that have lived in the residence(s) or other structures during your ownership: _____
66 _____

67 **Explain Section 2 (if needed):** _____
68 _____

69 **3. CONDOMINIUMS/PLANNED COMMUNITIES/HOMEOWNERS ASSOCIATIONS**

70 (A) Disclosures for condominiums and cooperatives are limited to Seller's particular unit(s). Disclosures
71 regarding common areas or facilities are not required by the Real Estate Seller Disclosure Law.

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 72 (B) Type. Is the Property part of a(n): | | | | | |
| 73   1. Condominium | B1 | | | | |
| 74   2. Homeowners association or planned community | B2 | | | | |
| 75   3. Cooperative | B3 | | | | |
| 76   4. Other type of association or community _____ | B4 | | | | |
| 77 (C) If "yes," how much are the fees? $_____, paid ([ ]Monthly)([ ] Quarterly)([ ] Yearly) | C | | | | |
| 78 (D) If "yes," are there any community services or systems that the association or community is responsi- | | | | | |
| 79 ble for supporting or maintaining? Explain: _____ | D | | | | |
| 80 (E) If "yes," provide the following information: | | | | | |
| 81   1. Community Name _____ | E1 | | | | |
| 82   2. Contact _____ | E2 | | | | |
| 83   3. Mailing Address _____ | E3 | | | | |
| 84   4. Telephone Number _____ | E4 | | | | |
| 85 (F) How much is the capital contribution/initiation fee(s)? $_____ | F | | | | |

86 *Notice to Buyer: A buyer of a resale unit in a condominium, cooperative, or planned community must receive a copy of the declaration*
87 *(other than the plats and plans), the by-laws, the rules or regulations, and a certificate of resale issued by the association, condominium,*
88 *cooperative, or planned community. Buyers may be responsible for capital contributions, initiation fees or similar one-time fees in addition*
89 *to regular maintenance fees. The buyer will have the option of canceling the agreement with the return of all deposit monies until the cer-*
90 *tificate has been provided to the buyer and for five days thereafter or until conveyance, whichever occurs first.*

91 **4. ROOFS AND ATTIC**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 92 (A) Installation | | | | | |
| 93   1. When was or were the roof or roofs installed? _____ | A1 | | | | |
| 94   2. Do you have documentation (invoice, work order, warranty, etc.)? | A2 | | | | |
| 95 (B) Repair | | | | | |
| 96   1. Was the roof or roofs or any portion of it or them replaced or repaired during your ownership? | B1 | | | | |
| 97   2. If it or they were replaced or repaired, were any existing roofing materials removed? | B2 | | | | |
| 98 (C) Issues | | | | | |
| 99   1. Has the roof or roofs ever leaked during your ownership? | C1 | | | | |
| 100   2. Have there been any other leaks or moisture problems in the attic? | C2 | | | | |
| 101   3. Are you aware of any past or present problems with the roof(s), attic, gutters, flashing or down- | | | | | |
| 102 spouts? | C3 | | | | |

103 Seller's Initials ___WRH___ Date 09/16/2021    **SPD Page 2 of 11**    Buyer's Initials _JSB_ _RAB_ Date 09/20/2021

| | | |
|---|---|---|
| 104 105 | Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered. | |
| 106 107 108 | Explain any "yes" answers in Section 4. Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date they were done: _____ | |

**5. BASEMENTS AND CRAWL SPACES**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) Sump Pump | | | | | |
| 1. Does the Property have a sump pit? If "yes," how many? _____ | A1 | | | | ■ |
| 2. Does the Property have a sump pump? If "yes," how many? _____ | A2 | | | | ■ |
| 3. If it has a sump pump, has it ever run? | A3 | | | | ■ |
| 4. If it has a sump pump, is the sump pump in working order? | A4 | | | | ■ |
| (B) Water Infiltration | | ■ | ■ | | |
| 1. Are you aware of any past or present water leakage, accumulation, or dampness within the basement or crawl space? | B1 | | | ■ | |
| 2. Do you know of any repairs or other attempts to control any water or dampness problem in the basement or crawl space? | B2 | | | ■ | |
| 3. Are the downspouts or gutters connected to a public sewer system? | B3 | | | ■ | |

| 121 122 123 124 | Explain any "yes" answers in Section 5. Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date they were done: _____ |
|---|---|

**6. TERMITES/WOOD-DESTROYING INSECTS, DRYROT, PESTS**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) Status | | | | | |
| 1. Are you aware of past or present dryrot, termites/wood-destroying insects or other pests on the Property? | A1 | | | ■ | |
| 2. Are you aware of any damage caused by dryrot, termites/wood-destroying insects or other pests? | A2 | | | ■ | |
| (B) Treatment | | ■ | ■ | | |
| 1. Is the Property currently under contract by a licensed pest control company? | B1 | | | ■ | |
| 2. Are you aware of any termite/pest control reports or treatments for the Property? | B2 | | | ■ | |

| 133 134 135 | Explain any "yes" answers in Section 6. Include the name of any service/treatment provider, if applicable: _____ |
|---|---|

**7. STRUCTURAL ITEMS**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) Are you aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components? | A | | | ■ | |
| (B) Are you aware of any past or present problems with driveways, walkways, patios or retaining walls on the Property? | B | | | ■ | |
| (C) Are you aware of any past or present water infiltration in the house or other structures, other than the roof(s), basement or crawl space(s)? | C | | | ■ | |
| (D) Stucco and Exterior Synthetic Finishing Systems | | | | | |
| 1. Is any part of the Property constructed with stucco or an Exterior Insulating Finishing System (EIFS) such as Dryvit or synthetic stucco, synthetic brick or synthetic stone? | D1 | | | ■ | |
| 2. If "yes," indicate type(s) and location(s) _____ | D2 | | | | ■ |
| 3. If "yes," provide date(s) installed | D3 | | | | ■ |
| (E) Are you aware of any fire, storm/weather-related, water, hail or ice damage to the Property? | E | | | ■ | |
| (F) Are you aware of any defects (including stains) in flooring or floor coverings? | F | | | ■ | |

| 150 151 152 | Explain any "yes" answers in Section 7. Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date the work was done: _____ |
|---|---|

**8. ADDITIONS/ALTERATIONS**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) Have any additions, structural changes or other alterations (including remodeling) been made to the Property during your ownership? Itemize and date all additions/alterations below. | A | | | | ■ |

| Addition, structural change or alteration (continued on following page) | Approximate date of work | Were permits obtained? (Yes/No/Unk/NA) | Final inspections/ approvals obtained? (Yes/No/Unk/NA) |
|---|---|---|---|
| | | | |
| | | | |

Seller's Initials [WBH] Date 09/16/2021    SPD Page 3 of 11    [JSB] [RAB]    09/20/2021

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

| | | | |
|---|---|---|---|
| 162<br>163 | Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered. | | |

| 164<br>165<br>166 | Addition, structural change or alteration | Approximate date of work | Were permits obtained?<br>(Yes/No/Unk/NA) | Final inspections/ approvals obtained?<br>(Yes/No/Unk/NA) |
|---|---|---|---|---|
| 167 | | | | |
| 168 | | | | |
| 169 | | | | |
| 170 | | | | |
| 171 | | | | |
| 172 | | | | |

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 173 | [ ] A sheet describing other additions and alterations is attached. | | | | |
| 174<br>175 | (B) Are you aware of any private or public architectural review control of the Property other than zoning codes? If "yes," explain: _____ B | | | | |

176  *Note to Buyer: The PA Construction Code Act, 35 P.S. §7210 et seq. (effective 2004), and local codes establish standards for building and*
177  *altering properties. Buyers should check with the municipality to determine if permits and/or approvals were necessary for disclosed work*
178  *and if so, whether they were obtained. Where required permits were not obtained, the municipality might require the current owner to up-*
179  *grade or remove changes made by the prior owners. Buyers can have the Property inspected by an expert in codes compliance to determine*
180  *if issues exist. Expanded title insurance policies may be available for Buyers to cover the risk of work done to the Property by previous*
181  *owners without a permit or approval.*

182  *Note to Buyer: According to the PA Stormwater Management Act, each municipality must enact a Storm Water Management Plan for*
183  *drainage control and flood reduction. The municipality where the Property is located may impose restrictions on impervious or semi-per-*
184  *vious surfaces added to the Property. Buyers should contact the local office charged with overseeing the Stormwater Management Plan*
185  *to determine if the prior addition of impervious or semi-pervious areas, such as walkways, decks, and swimming pools, might affect your*
186  *ability to make future changes.*

187  **9.  WATER SUPPLY**

| | | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|
| 188 | (A) Source. Is the source of your drinking water (check all that apply): | | | | | |
| 189 | 1. Public | A1 | | | | |
| 190 | 2. A well on the Property | A2 | | | | |
| 191 | 3. Community water | A3 | | | | |
| 192 | 4. A holding tank | A4 | | | | |
| 193 | 5. A cistern | A5 | | | | |
| 194 | 6. A spring | A6 | | | | |
| 195 | 7. Other _____ | A7 | | | | |
| 196 | 8. If no water service, explain: _____ | | | | | |
| 197 | (B) General | | | | | |
| 198 | 1. When was the water supply last tested? _____ | B1 | | | | |
| 199 | Test results: _____ | | | | | |
| 200 | 2. Is the water system shared? | B2 | | | | |
| 201 | 3. If "yes," is there a written agreement? | B3 | | | | |
| 202 | 4. Do you have a softener, filter or other conditioning system? | B4 | | | | |
| 203 | 5. Is the softener, filter or other treatment system leased? From whom? _____ | B5 | | | | |
| 204<br>205 | 6. If your drinking water source is not public, is the pumping system in working order? If "no," explain: _____ | B6 | | | | |
| 206 | (C) Bypass Valve (for properties with multiple sources of water) | | | | | |
| 207 | 1. Does your water source have a bypass valve? | C1 | | | | |
| 208 | 2. If "yes," is the bypass valve working? | C2 | | | | |
| 209 | (D) Well | | | | | |
| 210 | 1. Has your well ever run dry? | D1 | | | | |
| 211 | 2. Depth of well _____ | D2 | | | | |
| 212 | 3. Gallons per minute: _____, measured on (date) _____ | D3 | | | | |
| 213 | 4. Is there a well that is used for something other than the primary source of drinking water? | D4 | | | | |
| 214 | If "yes," explain _____ | | | | | |
| 215 | 5. If there is an unused well, is it capped? | D5 | | | | |

216  Seller's Initials _____ /WRH/  Date 09/16/2021     SPD Page 4 of 11     /JSB/ /RAB/     09/20/2021

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                James J Kubasko

AuthentiSign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

| 217 218 | Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered. | | | | |
|---|---|---|---|---|---|

| 219 | **(E) Issues** | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|
| 220 221 | 1. Are you aware of any leaks or other problems, past or present, relating to the water supply, pumping system and related items? | E1 | | | X | |
| 222 | 2. Have you ever had a problem with your water supply? | E2 | | | X | |

223 224 225 **Explain any problem(s) with your water supply. Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date the work was done:** _____

226 ## 10. SEWAGE SYSTEM

| 227 | **(A) General** | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|
| 228 | 1. Is the Property served by a sewage system (public, private or community)? | A1 | X | | | |
| 229 | 2. If "no," is it due to unavailability or permit limitations? | A2 | | | | X |
| 230 | 3. When was the sewage system installed (or date of connection, if public)? _____ | A3 | | | | X |
| 231 | 4. Name of current service provider, if any: _____ | A4 | | | | X |
| 232 | **(B) Type Is your Property served by:** | | | | | |
| 233 | 1. Public | B1 | | X | | |
| 234 | 2. Community (non-public) | B2 | | | | X |
| 235 | 3. An individual on-lot sewage disposal system | B3 | X | | | |
| 236 | 4. Other, explain: _____ | B4 | | | | X |
| 237 | **(C) Individual On-lot Sewage Disposal System. (check all that apply):** | | | | | |
| 238 | 1. Is your sewage system within 100 feet of a well? | C1 | | X | | |
| 239 | 2. Is your sewage system subject to a ten-acre permit exemption? | C2 | | | | X |
| 240 | 3. Does your sewage system include a holding tank? | C3 | | X | | |
| 241 | 4. Does your sewage system include a septic tank? | C4 | X | | | |
| 242 | 5. Does your sewage system include a drainfield? | C5 | X | | | |
| 243 | 6. Does your sewage system include a sandmound? | C6 | | X | | |
| 244 | 7. Does your sewage system include a cesspool? | C7 | | X | | |
| 245 | 8. Is your sewage system shared? | C8 | | X | | |
| 246 | 9. Is your sewage system any other type? Explain: _____ | C9 | | | | X |
| 247 | 10. Is your sewage system supported by a backup or alternate system? | C10 | | X | | |
| 248 | **(D) Tanks and Service** | | | | | |
| 249 | 1. Are there any metal/steel septic tanks on the Property? | D1 | | X | | |
| 250 | 2. Are there any cement/concrete septic tanks on the Property? | D2 | X | | | |
| 251 | 3. Are there any fiberglass septic tanks on the Property? | D3 | | X | | |
| 252 | 4. Are there any other types of septic tanks on the Property? Explain | D4 | | | | X |
| 253 | 5. Where are the septic tanks located? _____ | D5 | | | | |
| 254 255 | 6. When were the tanks last pumped and by whom? _____ | D6 | | | | |
| 256 | **(E) Abandoned Individual On-lot Sewage Disposal Systems and Septic** | | | | | |
| 257 | 1. Are you aware of any abandoned septic systems or cesspools on the Property? | E1 | | X | | |
| 258 259 | 2. If "yes," have these systems, tanks or cesspools been closed in accordance with the municipality's ordinance? | E2 | | | | X |
| 260 | **(F) Sewage Pumps** | | | | | |
| 261 | 1. Are there any sewage pumps located on the Property? | F1 | | X | | |
| 262 | 2. If "yes," where are they located? _____ | F2 | | | | X |
| 263 | 3. What type(s) of pump(s)? _____ | F3 | | | | X |
| 264 | 4. Are pump(s) in working order? | F4 | | | | X |
| 265 266 | 5. Who is responsible for maintenance of sewage pumps? _____ | F5 | | | | X |
| 267 | **(G) Issues** | | | | | |
| 268 | 1. How often is the on-lot sewage disposal system serviced? _____ | G1 | | | | |
| 269 270 | 2. When was the on-lot sewage disposal system last serviced and by whom? _____ | G2 | | | | |
| 271 | 3. Is any waste water piping not connected to the septic/sewer system? | G3 | | X | | |
| 272 273 | 4. Are you aware of any past or present leaks, backups, or other problems relating to the sewage system and related items? | G4 | | | X | |

274 **Seller's Initials** _____ **Date** 09/16/2021     **SPD Page 5 of 11**     _JSB_   _RAB_   09/20/2021

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    James J Kubasko

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

| | | | | | |
|---|---|---|---|---|---|
| 275 | Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered. | | | | |

277 Explain any "yes" answers in Section 10. Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date the work was done: _____

279 _____

### 11. PLUMBING SYSTEM

| | | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|
| 281 | (A) **Material(s).** Are the plumbing materials (check all that apply): | | | | | |
| 282 | 1. Copper | A1 | | | | ■ |
| 283 | 2. Galvanized | A2 | | | | ■ |
| 284 | 3. Lead | A3 | | | | ■ |
| 285 | 4. PVC | A4 | | | | ■ |
| 286 | 5. Polybutylene pipe (PB) | A5 | | | | ■ |
| 287 | 6. Cross-linked polyethyline (PEX) | A6 | | | | ■ |
| 288 | 7. Other _____ | A7 | | | | ■ |
| 289 | (B) Are you aware of any past or present problems with any of your plumbing fixtures (e.g., including but | | | | | |
| 290 | not limited to; kitchen, laundry, or bathroom fixtures; wet bars; exterior faucets; etc.)? | B | | ■ | | |
| 291 | If "yes," explain: _____ | | | | | |

292 _____

### 12. DOMESTIC WATER HEATING

| | | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|
| 294 | (A) **Type(s).** Is your water heating (check all that apply): | | | | | |
| 295 | 1. Electric | A1 | | | | ■ |
| 296 | 2. Natural gas | A2 | | | | ■ |
| 297 | 3. Fuel oil | A3 | | | | ■ |
| 298 | 4. Propane | A4 | | | | ■ |
| 299 | If "yes," is the tank owned by Seller? | | | | | ■ |
| 300 | 5. Solar | A5 | | | | ■ |
| 301 | If "yes," is the system owned by Seller? | | | | | ■ |
| 302 | 6. Geothermal | A6 | | | | ■ |
| 303 | 7. Other _____ | A7 | | | | ■ |
| 304 | (B) **System(s)** | | ■ | | | |
| 305 | 1. How many water heaters are there? _____ | B1 | | | | ■ |
| 306 | Tanks _____ Tankless _____ | | | | | |
| 307 | 2. When were they installed? _____ | B2 | | | | ■ |
| 308 | 3. Is your water heater a summer/winter hook-up (integral system, hot water from the boiler, etc.)? | B3 | | | | ■ |
| 309 | (C) Are you aware of any problems with any water heater or related equipment? | C | | ■ | | |
| 310 | If "yes," explain: _____ | | | | | |

311 _____

### 13. HEATING SYSTEM

| | | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|
| 313 | (A) **Fuel Type(s).** Is your heating source (check all that apply): | | | | | |
| 314 | 1. Electric | A1 | | | | ■ |
| 315 | 2. Natural gas | A2 | | | | ■ |
| 316 | 3. Fuel oil | A3 | | | | ■ |
| 317 | 4. Propane | A4 | | | | ■ |
| 318 | If "yes," is the tank owned by Seller? | | | | | |
| 319 | 5. Geothermal | A5 | | | | ■ |
| 320 | 6. Coal | A6 | | | | ■ |
| 321 | 7. Wood | A7 | | | | ■ |
| 322 | 8. Solar shingles or panels | A8 | | | | ■ |
| 323 | If "yes," is the system owned by Seller? | | | | | |
| 234 | 9. Other: _____ | A9 | | | | ■ |
| 325 | (B) **System Type(s)** (check all that apply): | | ■ | | | |
| 326 | 1. Forced hot air | B1 | | | | ■ |
| 327 | 2. Hot water | B2 | | | | ■ |
| 328 | 3. Heat pump | B3 | | | | ■ |
| 329 | 4. Electric baseboard | B4 | | | | ■ |
| 330 | 5. Steam | B5 | | | | ■ |
| 331 | 6. Radiant flooring | B6 | | | | ■ |
| 332 | 7. Radiant ceiling | B7 | | | | ■ |

333 Seller's Initials _____ Date ___09/16/2021___ SPD Page 6 of 11 ⌐*JSB*¬ ⌐*RAB*¬ ___09/20/2021___

James J Kubasko

| 334 335 | Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered. | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|

| Line | Question | Ref | Yes | No | Unk | N/A |
|---|---|---|---|---|---|---|
| 336 | 8. Pellet stove(s) | B8 | ■ | ■ | | ■ |
| 337 | How many and location? _____ | | | | | |
| 338 | 9. Wood stove(s) | B9 | ■ | ■ | | ■ |
| 339 | How many and location? _____ | | | | | |
| 340 | 10. Coal stove(s) | B10 | | | | ■ |
| 341 | How many and location? _____ | | | | | |
| 342 | 11. Wall-mounted split system(s) | B11 | | | | ■ |
| 343 | How many and location? _____ | | | | | |
| 344 | 12. Other: _____ | B12 | | | | ■ |
| 345 | 13. If multiple systems, provide locations _____ | | | | | |
| 346 | | B13 | ■ | ■ | | |
| 347 | **(C) Status** | | | | | |
| 348 | 1. Are there any areas of the house that are not heated? | C1 | ■ | ■ | | |
| 349 | If "yes," explain: _____ | | | | | |
| 350 | 2. How many heating zones are in the Property? _____ | C2 | ■ | ■ | | |
| 351 | 3. When was each heating system(s) or zone installed? | C3 | ■ | ■ | | |
| 352 | 4. When was the heating system(s) last serviced? _____ | C4 | ■ | ■ | | |
| 353 | 5. Is there an additional and/or backup heating system? If "yes," explain: _____ | | | | | |
| 354 | _____ | C5 | | | | ■ |
| 355 | 6. Is any part of the heating system subject to a lease, financing or other agreement? | C6 | | | | ■ |
| 356 | If "yes," explain: _____ | | | | | |
| 357 | **(D) Fireplaces and Chimneys** | | | | | |
| 358 | 1. Are there any fireplaces? How many? _____ | D1 | | | | ■ |
| 359 | 2. Are all fireplaces working? | D2 | | | | ■ |
| 360 | 3. Fireplace types (wood, gas, electric, etc.): _____ | D3 | ■ | | | |
| 361 | 4. Was the fireplace(s) installed by a professional contractor or manufacturer's representative? | D4 | | | | ■ |
| 362 | 5. Are there any chimneys (from a fireplace, water heater or any other heating system)? | D5 | ■ | | | |
| 363 | 6. How many chimneys? _____ | D6 | ■ | | | |
| 364 | 7. When were they last cleaned? _____ | D7 | | | | ■ |
| 365 | 8. Are the chimneys working? If "no," explain: _____ | D8 | ■ | | | |
| 366 | **(E) Fuel Tanks** | | | | | |
| 367 | 1. Are you aware of any heating fuel tank(s) on the Property? | E1 | | ■ | | |
| 368 | 2. Location(s), including underground tank(s): _____ | E2 | | | | ■ |
| 369 | 3. If you do not own the tank(s), explain: _____ | E3 | | | | ■ |
| 370 371 | **(F) Are you aware of any problems or repairs needed regarding any item in Section 13? If "yes," explain:** _____ | F | | ■ | | |
| 372 | **14. AIR CONDITIONING SYSTEM** | | | | | |
| 373 | **(A) Type(s). Is the air conditioning (check all that apply):** | | | | | |
| 374 | 1. Central air | A1 | ■ | | | |
| 375 | a. How many air conditioning zones are in the Property? _____ | 1a | ■ | | | |
| 376 | b. When was each system or zone installed? _____ | 1b | ■ | | | |
| 377 | c. When was each system last serviced? _____ | 1c | ■ | | | |
| 378 | 2. Wall units | A2 | | | | ■ |
| 379 | How many and the location? _____ | | | | | |
| 380 | 3. Window units | A3 | | | | ■ |
| 381 | How many? _____ | | | | | |
| 382 | 4. Wall-mounted split units | A4 | | | | ■ |
| 383 | How many and the location? _____ | | | | | |
| 384 | 5. Other _____ | A5 | | | | ■ |
| 385 | 6. None | A6 | | | | ■ |
| 386 | **(B) Are there any areas of the house that are not air conditioned?** | B | ■ | ■ | | |
| 387 | If "yes," explain: _____ | | | | | |
| 388 389 | **(C) Are you aware of any problems with any item in Section 14? If "yes," explain:** _____ | | | ■ | | |

| 390 | Seller's Initials /_WRH_ Date 09/16/2021 | SPD Page 7 of 11 | TSB  RAB  09/20/2021 |
|---|---|---|---|

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

### 15. ELECTRICAL SYSTEM

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 394 | (A) Type(s) | | | | |
| 395 | 1. Does the electrical system have fuses? A1 | | | | ■ |
| 396 | 2. Does the electrical system have circuit breakers? A2 | | | | ■ |
| 397 | 3. Is the electrical system solar powered? A3 | | | | ■ |
| 398 | a. If "yes," is it entirely or partially solar powered? _____ 3a | ■ | | | |
| 399–400 | b. If "yes," is any part of the system subject to a lease, financing or other agreement? If "yes," explain: _____ 3b | | | | |
| 401 | (B) What is the system amperage? _____ B | | | | ■ |
| 402 | (C) Are you aware of any knob and tube wiring in the Property? C | | ■ | | |
| 403–404 | (D) Are you aware of any problems or repairs needed in the electrical system? If "yes," explain: _____ D | | ■ | | |

### 16. OTHER EQUIPMENT AND APPLIANCES

405
406 (A) **THIS SECTION IS INTENDED TO IDENTIFY PROBLEMS OR REPAIRS** and must be completed for each item that
407 will, or may, be included with the Property. The terms of the Agreement of Sale negotiated between Buyer and Seller will deter-
408 mine which items, if any, are included in the purchase of the Property. **THE FACT THAT AN ITEM IS LISTED DOES NOT**
409 **MEAN IT IS INCLUDED IN THE AGREEMENT OF SALE.**

410 (B) Are you aware of any problems or repairs needed to any of the following:

| Item | Yes | No | N/A | | Item | Yes | No | N/A |
|---|---|---|---|---|---|---|---|---|
| A/C window units | | | | | Pool/spa heater | | | |
| Attic fan(s) | | | | | Range/oven | | | |
| Awnings | | | | | Refrigerator(s) | | | |
| Carbon monoxide detectors | | | | | Satellite dish | | | |
| Ceiling fans | | | | | Security alarm system | | | |
| Deck(s) | | | | | Smoke detectors | | | |
| Dishwasher | | | | | Sprinkler automatic timer | | | |
| Dryer | | | | | Stand-alone freezer | | | |
| Electric animal fence | | | | | Storage shed | | | |
| Electric garage door opener | | | | | Trash compactor | | | |
| Garage transmitters | | | | | Washer | | | |
| Garbage disposal | | | | | Whirlpool/tub | | | |
| In-ground lawn sprinklers | | | | | Other: | | | |
| Intercom | | | | | 1. | | | |
| Interior fire sprinklers | | | | | 2. | | | |
| Keyless entry | | | | | 3. | | | |
| Microwave oven | | | | | 4. | | | |
| Pool/spa accessories | | | | | 5. | | | |
| Pool/spa cover | | | | | 6. | | | |

431–432 (C) Explain any "yes" answers in Section 16: _____

### 17. POOLS, SPAS AND HOT TUBS

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 434 | (A) Is there a swimming pool on the Property? If "yes,": A | | | | ■ |
| 435 | 1. Above-ground or in-ground? _____ A1 | | | | ■ |
| 436 | 2. Saltwater or chlorine? _____ A2 | | | | ■ |
| 437 | 3. If heated, what is the heat source? _____ A3 | | | | ■ |
| 438 | 4. Vinyl-lined, fiberglass or concrete-lined? _____ A4 | | | | ■ |
| 439 | 5. What is the depth of the swimming pool? _____ A5 | | | | ■ |
| 440 | 6. Are you aware of any problems with the swimming pool? A6 | | | | ■ |
| 441–442 | 7. Are you aware of any problems with any of the swimming pool equipment (cover, filter, ladder, lighting, pump, etc.)? A7 | | | | ■ |
| 443 | (B) Is there a spa or hot tub on the Property? B | | | | ■ |
| 444 | 1. Are you aware of any problems with the spa or hot tub? B1 | | | | ■ |
| 445–446 | 2. Are you aware of any problems with any of the spa or hot tub equipment (steps, lighting, jets, cover, etc.)? B2 | | | | ■ |

447–448 (C) Explain any problems in Section 17: _____

449 Seller's Initials __WRH__  Date __09/16/2021__  SPD Page 8 of 11  __TSB__ __RLB__  __09/20/2021__

AuthentiSign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

| | | | Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered. |
|---|---|---|---|

**18. WINDOWS**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) Have any windows or skylights been replaced during your ownership of the Property? | A | | | | |
| (B) Are you aware of any problems with the windows or skylights? | B | | | | |

Explain any "yes" answers in Section 18. Include the location and extent of any problem(s) and any repair, replacement or remediation efforts, the name of the person or company who did the repairs and the date the work was done: _____

**19. LAND/SOILS**

(A) Property

| | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of any fill or expansive soil on the Property? A1 | | | | |
| 2. Are you aware of any sliding, settling, earth movement, upheaval, subsidence, sinkholes or earth stability problems that have occurred in or affect the Property? A2 | | | | |
| 3. Are you aware of sewage sludge (other than commercially available fertilizer products) being spread on the Property? A3 | | | | |
| 4. Have you received written notice of sewage sludge being spread on an adjacent property? A4 | | | | |
| 5. Are you aware of any existing, past or proposed mining, strip-mining, or any other excavations on the Property? A5 | | | | |

*Note to Buyer: The Property may be subject to mine subsidence damage. Maps of the counties and mines where mine subsidence damage may occur and further information on mine subsidence insurance are available through Department of Environmental Protection Mine Subsidence Insurance Fund, (800) 922-1678 or ra-epmsi@pa.gov.*

(B) Preferential Assessment and Development Rights

Is the Property, or a portion of it, preferentially assessed for tax purposes, or subject to limited development rights under the:

| | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Farmland and Forest Land Assessment Act - 72 P.S.§5490.1, et seq. (Clean and Green Program) B1 | | | | |
| 2. Open Space Act - 16 P.S. §11941, et seq. B2 | | | | |
| 3. Agricultural Area Security Law - 3 P.S. §901, et seq. (Development Rights) B3 | | | | |
| 4. Any other law/program: _____ B4 | | | | |

*Note to Buyer: Pennsylvania has enacted the Right to Farm Act (3 P.S. § 951-957) in an effort to limit the circumstances under which agricultural operations may be subject to nuisance suits or ordinances. Buyers are encouraged to investigate whether any agricultural operations covered by the Act operate in the vicinity of the Property.*

(C) Property Rights

Are you aware of the transfer, sale and/or lease of any of the following property rights (by you or a previous owner of the Property):

| | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Timber C1 | | | | |
| 2. Coal C2 | | | | |
| 3. Oil C3 | | | | |
| 4. Natural gas C4 | | | | |
| 5. Mineral or other rights (such as farming rights, hunting rights, quarrying rights) Explain: C5 | | | | |

*Note to Buyer: Before entering into an agreement of sale, Buyer can investigate the status of these rights by, among other means, engaging legal counsel, obtaining a title examination of unlimited years and searching the official records in the county Office of the Recorder of Deeds, and elsewhere. Buyer is also advised to investigate the terms of any existing leases, as Buyer may be subject to terms of those leases.*

Explain any "yes" answers in Section 19: _____

**20. FLOODING, DRAINAGE AND BOUNDARIES**

(A) Flooding/Drainage

| | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Is any part of this Property located in a wetlands area? A1 | | | | |
| 2. Is the Property, or any part of it, designated a Special Flood Hazard Area (SFHA)? A2 | | | | |
| 3. Do you maintain flood insurance on this Property? A3 | | | | |
| 4. Are you aware of any past or present drainage or flooding problems affecting the Property? A4 | | | | |
| 5. Are you aware of any drainage or flooding mitigation on the Property? A5 | | | | |
| 6. Are you aware of the presence on the Property of any man-made feature that temporarily or permanently conveys or manages storm water, including any basin, pond, ditch, drain, swale, culvert, pipe or other feature? A6 | | | | |
| 7. If "yes," are you responsible for maintaining or repairing that feature which conveys or manages storm water for the Property? A7 | | | | |

Seller's Initials [WBH] Date 09/16/2021 SPD Page 9 of 11 [JSB] / [RAB] 09/20/2021

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    James J Kubasko

AuthentiSign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

509  Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the
510  Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

511  Explain any "yes" answers in Section 20(A). Include dates, the location and extent of flooding and the condition of any man-
512  made storm water management features: _____
513

| 514 (B) Boundaries | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 515 | 1. Are you aware of encroachments, boundary line disputes, or easements affecting the Property? **B1** | | | ■ | |
| 516 | 2. Is the Property accessed directly (without crossing any other property) by or from a public road? **B2** | | | | ■ |
| 517 | 3. Can the Property be accessed from a private road or lane? **B3** | | | | ■ |
| 518 | a. If "yes," is there a written right of way, easement or maintenance agreement? **3a** | | | | ■ |
| 519 | b. If "yes," has the right of way, easement or maintenance agreement been recorded? **3b** | | | | ■ |
| 520 | 4. Are you aware of any shared or common areas (driveways, bridges, docks, walls, etc.) or mainte- | | | | |
| 521 | nance agreements? **B4** | | | ■ | |

522  *Note to Buyer: Most properties have easements running across them for utility services and other reasons. In many cases, the ease-*
523  *ments do not restrict the ordinary use of the property, and Seller may not be readily aware of them. Buyers may wish to determine*
524  *the existence of easements and restrictions by examining the property and ordering an Abstract of Title or searching the records in*
525  *the Office of the Recorder of Deeds for the county before entering into an agreement of sale.*

526  Explain any "yes" answers in Section 20(B): _____
527  _____

528  **21. HAZARDOUS SUBSTANCES AND ENVIRONMENTAL ISSUES**

| 529 (A) Mold and Indoor Air Quality (other than radon) | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 530 | 1. Are you aware of any tests for mold, fungi, or indoor air quality in the Property? **A1** | | | | ■ |
| 531 | 2. Other than general household cleaning, have you taken any efforts to control or remediate mold or | | | | |
| 532 | mold-like substances in the Property? **A2** | | | | ■ |

533  *Note to Buyer: Individuals may be affected differently, or not at all, by mold contamination. If mold contamination or indoor air*
534  *quality is a concern, buyers are encouraged to engage the services of a qualified professional to do testing. Information on this*
535  *issue is available from the United States Environmental Protection Agency and may be obtained by contacting IAQ INFO, P.O. Box*
536  *37133, Washington, D.C. 20013-7133, 1-800-438-4318.*

| 537 (B) Radon | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 538 | 1. Are you aware of any tests for radon gas that have been performed in any buildings on the Property? **B1** | | | ■ | |
| 539 | 2. If "yes," provide test date and results _____ **B2** | ■ | | | |
| 540 | 3. Are you aware of any radon removal system on the Property? **B3** | | | ■ | |
| 541 (C) Lead Paint | | | | | |
| 542 | If the Property was constructed, or if construction began, before 1978, you must disclose any knowl- | ■ | | | |
| 543 | edge of, and records and reports about, lead-based paint on the Property on a separate disclosure form. | | | | |
| 544 | 1. Are you aware of any lead-based paint or lead-based paint hazards on the Property? **C1** | | | ■ | |
| 545 | 2. Are you aware of any reports or records regarding lead-based paint or lead-based paint hazards on | | | | |
| 546 | the Property? **C2** | | | ■ | |
| 547 (D) Tanks | | | | | |
| 548 | 1. Are you aware of any existing underground tanks? **D1** | | | ■ | |
| 549 | 2. Are you aware of any underground tanks that have been removed or filled? **D2** | | | ■ | |
| 550 (E) Dumping. Has any portion of the Property been used for waste or refuse disposal or storage? **E** | | | | | ■ |
| 551 | If "yes," location: _____ | | | | |
| 552 (F) Other | | | | | |
| 553 | 1. Are you aware of any past or present hazardous substances on the Property (structure or soil) | | | | |
| 554 | such as, but not limited to, asbestos or polychlorinated biphenyls (PCBs)? **F1** | | | ■ | |
| 555 | 2. Are you aware of any other hazardous substances or environmental concerns that may affect the | | | | |
| 556 | Property? **F2** | | | ■ | |
| 557 | 3. If "yes," have you received written notice regarding such concerns? **F3** | | | | ■ |
| 558 | 4. Are you aware of testing on the Property for any other hazardous substances or environmental | | | | |
| 559 | concerns? **F4** | | | ■ | |

560  Explain any "yes" answers in Section 21. Include test results and the location of the hazardous substance(s) or environmental
561  issue(s): _____

562  **22. MISCELLANEOUS**

| 563 (A) Deeds, Restrictions and Title | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 564 | 1. Are there any deed restrictions or restrictive covenants that apply to the Property? **A1** | | | ■ | |
| 565 | 2. Are you aware of any historic preservation restriction or ordinance or archeological designation | | | | |
| 566 | associated with the Property? **A2** | | | ■ | |

567  Seller's Initials _____ *WRK*  Date  09/16/2021   SPD Page 10 of 11   *JSB* / *RGB*   09/20/2021

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com  James J Kubasko

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|

568 Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the
569 Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

570     3. Are you aware of any reason, including a defect in title or contractual obligation such as an option
571        or right of first refusal, that would prevent you from giving a warranty deed or conveying title to the
572        Property?     **A3**

573 (B) **Financial**
574     1. Are you aware of any public improvement, condominium or homeowner association assessments
575        against the Property that remain unpaid or of any violations of zoning, housing, building, safety or
576        fire ordinances or other use restriction ordinances that remain uncorrected?     **B1**

577     2. Are you aware of any mortgages, judgments, encumbrances, liens, overdue payments on a support
578        obligation, or other debts against this Property or Seller that cannot be satisfied by the proceeds of
579        this sale?     **B2**

580     3. Are you aware of any insurance claims filed relating to the Property during your ownership?     **B3**

581 (C) **Legal**
582     1. Are you aware of any violations of federal, state, or local laws or regulations relating to this Prop-
583        erty?     **C1**

584     2. Are you aware of any existing or threatened legal action affecting the Property?     **C2**

585 (D) **Additional Material Defects**
586     1. Are you aware of any material defects to the Property, dwelling, or fixtures which are not dis-
587        closed elsewhere on this form?     **D1**

588        *Note to Buyer: A material defect is a problem with a residential real property or any portion of it that would have a significant*
589        *adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a*
590        *structural element, system or subsystem is at or beyond the end of the normal useful life of such a structural element, system or*
591        *subsystem is not by itself a material defect.*

592     **2. After completing this form, if Seller becomes aware of additional information about the Property, including through**
593        **inspection reports from a buyer, the Seller must update the Seller's Property Disclosure Statement and/or attach the**
594        **inspection report(s).** These inspection reports are for informational purposes only.

595     **Explain any "yes" answers in Section 22:** _____
596     _____

597 **23. ATTACHMENTS**
598     (A) The following are part of this Disclosure if checked:
599        [  ] Seller's Property Disclosure Statement Addendum (PAR Form SDA)
600        [  ] _____
601        [  ] _____
602        [  ] _____

603 The undersigned Seller represents that the information set forth in this disclosure statement is accurate and complete to the best
604 of Seller's knowledge. Seller hereby authorizes the Listing Broker to provide this information to prospective buyers of the prop-
605 erty and to other real estate licensees. **SELLER ALONE IS RESPONSIBLE FOR THE ACCURACY OF THE INFORMA-**
606 **TION CONTAINED IN THIS STATEMENT.** If any information supplied on this form becomes inaccurate following comple-
607 tion of this form, Seller shall notify Buyer in writing.

608 SELLER ┌─ Authentisign _____ James J Kubasko Jr. DATE ___09/16/2021___
609 SELLER *William R Hartzell Guardian* _____ By & Through his Guardian William R Hartzell DATE _____
610 SELLER 9/16/2021 2:17:59 PM GMT _____ DATE _____
611 SELLER _____ DATE _____
612 SELLER _____ DATE _____
613 SELLER _____ DATE _____

614            **RECEIPT AND ACKNOWLEDGEMENT BY BUYER**

615 The undersigned Buyer acknowledges receipt of this Statement. Buyer acknowledges that this Statement is not a warranty and
616 that, unless stated otherwise in the sales contract, Buyer is purchasing this property in its present condition. It is Buyer's re-
617 sponsibility to satisfy himself or herself as to the condition of the property. Buyer may request that the property be inspected, at
618 Buyer's expense and by qualified professionals, to determine the condition of the structure or its components.

619 BUYER *Thomas S Boland* _____ DATE ___09/20/2021___
620 BUYER *Renee A Boland* _____ DATE ___09/20/2021___
621 BUYER _____ DATE ___09/21/2021___
    9/21/2021 1:45:36 AM GMT

           **SPD Page 11 of 11**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        James J Kubasko

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

Authentisign ID: EF68861E-1813-42E3-8A02-BAA8C303C042

## RESIDENTIAL LEAD-BASED PAINT HAZARDS DISCLOSURE FORM

**LPD**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

### THIS FORM MUST BE COMPLETED FOR ANY PROPERTY BUILT PRIOR TO 1978

| | |
|---|---|
| 1 | **PROPERTY** 79 West Shore Dr  Jefferson Twp, Pa 18436, ,  18436 |
| 2 | **SELLER** James J Kubasko Jr., By & Through his Guardian William R Hartzell |

3  **LEAD WARNING STATEMENT**
4  Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such
5  property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead
6  poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient,
7  behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest
8  in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or
9  inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for
10  possible lead-based paint hazards is recommended prior to purchase.

11  **SELLER'S DISCLOSURE**
12  ____ / ____ Seller has no knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the Property.
13  ____ / ____ Seller has knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the Property. (Provide the
14  basis for determining that lead-based paint and/or hazards exist, the location(s), the condition of the painted surfaces, and other
15  available information concerning Seller's knowledge of the presence of lead-based paint and/or lead-based paint hazards.)
16  _____

17  **SELLER'S RECORDS/REPORTS**
18  ____ / ____ Seller has no records or reports pertaining to lead-based paint and/or lead-based paint hazards in or about the Property.
19  ____ / ____ Seller has provided  Buyer with all available records and reports regarding lead-based paint and/or lead-based paint hazards in
20  or about the Property. (List documents): _____
21  _____
22  Seller certifies that, to the best of Seller's knowledge the above statements are true and accurate.
23  **SELLER** _____ James J Kubasko Jr. **DATE** _____
24  **SELLER** _William R Hartzell Guardian_____ By & Through his Guardian William R Hartzell **DATE** _09/16/2021_
25  **SELLER** — 9/16/2021 2:17:37 PM GMT _____ **DATE** _____
26  **BUYER** _____ **DATE** _____
27  **DATE OF AGREEMENT** _____

28  **BUYER'S ACKNOWLEDGMENT**
29  ____ / ____ Buyer has received the pamphlet *Protect Your Family from Lead in Your Home* and has read the Lead Warning Statement.
30  ____ / ____ Buyer has reviewed Seller's disclosure of known lead-based paint and/or lead-based paint hazards and has received the records
31  and reports regarding lead-based paint and/or lead-based paint hazards identified above.
32  Buyer has (initial one):
33  ____ / ____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of
34  lead-based paint and/or lead-based paint hazards; or
35  ____ / ____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based
36  paint hazards.
37  Buyer certifies that to the best of Buyer's knowledge the statements contained in Buyer's acknowledgement are true and accurate.
38  **BUYER** _Thomas J Boland_____ **DATE** _09/20/2021_
39         9/20/2021 11:04:53 PM GMT
40  **BUYER** _Renee A Boland_____ **DATE** _____
41         9/20/2021 10:58:27 PM GMT **DATE** 09/20/2021
42  **AGENT ACKNOWLEDGEMENT AND CERTIFICATION**       9/21/2021 1:47:19 AM GMT
43  ____ / ____ Agent/Licensee represents that Agent has informed Seller of Seller's obligations under the Residential Lead-Based Paint
           Hazard Reduction Act, 42 U.S.C. §4852(d), and is aware of Agent's responsibility to ensure compliance.

44  The following have reviewed the information above and certify that the Agent statements are true to the best of their knowledge and belief.
45  Seller Agent and Buyer Agent must both sign this form.

46  **BROKER FOR SELLER** (Company Name) CLASSIC PROPERTIES
47  **LICENSEE** _Margaret Hennemuth_____ Margaret Hennemuth **DATE** _9/16/21_
48  **BROKER FOR BUYER** (Company Name) _Classic Properties_
49  **LICENSEE** _Margaret Hennemuth_____ **DATE** _9/20/21_

Pennsylvania Association of Realtors®          COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016
                                                                            10/16

CLASSIC PROPERTIES, 324 S. State St. Clarks Summit PA 18411          Phone: (570)587-7000          Fax: (570)586-8404          James J Kubasko
Margaret Hennemuth                            Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

AuthentiSign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

# BUYER'S ESTIMATED COSTS

**BEC**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

**PROPERTY** 79 W Shore Dr, Jefferson Twp, 18436

**BUYER** Thomas S Boland, Renee A Boland, Mary Jennifer Frattali

**SETTLEMENT DATE** 30 days after the courts approval       **PURCHASE PRICE $ 500,000.00**

1. **Title**
   (A) Title Search/Insurance _____ $    3,305.00
       ☐ Standard ☒ Enhanced
   (B) Closing Protection Letter _____ $ _____
   (C) Title Endorsements _____ $ _____
   (D) Mechanics Lien Insurance _____ $ _____
   (E) Settlement/Notary Fees _____ $      250.00
   (F) Recording Fees (Mortgage/Deed) _____ $ _____
   (G) Transfer Tax _____ $    5,000.00
   (H) Survey _____ $ _____
   (I) Domestic Lien Search _____ $ _____
   (J) "Patriot Act" Search _____ $ _____
   (K) **Attorney Fee** _____ $      500.00
2. **Broker's Fee** _____
3. **Property Insurance** (e.g. Home owner's Insurance, Flood Insurance)
   (A) First Year's Premium _____ $ _____ *
   (B) Lender Escrow _____ $ _____
4. **Adjustments (+/-)**
   (A) School Tax _____ $ _____
   (B) County Tax _____ $ _____
   (C) Municipal Tax _____ $ _____
   (D) Lender Escrows _____ $ _____
   (E) Association Fees (prorations) _____ $      800.00
   (F) Association Fees (capital contributions, etc.) $ _____
   (G) Lienable Utilities _____ $ _____
5. **Inspection Fees**
   (A) Property Inspection _____ $ _____ *
   (B) Wood Infestation _____ $ _____ *
   (C) Radon _____ $ _____ *
   (D) Water _____ $ _____ *
   (E) Sewer _____ $ _____ *
   (F) Other (e.g., lead paint) _____ $ _____ *
6. **Lender**
   (A) Fees Charged as Percentage of Loan _____ $ _____ *
   (B) Appraisal & Credit Report(s) _____ $ _____ *
   (C) Mortgage Insurance Lender Escrow _____ $ _____
   (D) Mortgage Insurance Premium _____ $ _____ **
   (E) VA Funding Fee _____ $ _____ **
   (F) Preparation Mortgage Documents _____ $ _____
   (G) Interest from settlement date until end of month, at $ _____ per day _____ $ _____
   (H) Miscellaneous Fees (e.g., flood cert., tax service, courier, etc.) _____ $ _____
   (I) _____ $ _____
7. **Home Warranty** _____ $ _____
8. **Other** _____ $ _____
              **Estimated Costs  $    9,855.00**

**Notice to Buyer:** Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options.

**First Mortgage - Estimated Monthly Payments INITIALLY**
Mortgage Type: ☐ Fixed Rate ☐ Adjustable Rate
Based on $ _____ , for _____ years,
at the following rate(s): _____ % _____ %
Principal and Interest _____ $ _____ $ _____
Taxes _____ $ _____ $ _____
Property Insurance _____ $ _____ $ _____
Mortgage Insurance Premium _____ $ _____ $ _____
Condo/Home owner's Assoc. Fees $ _____ $ _____
**Estimated Total** _____ $ _____ $ _____

**Second Mortgage - - Estimated Monthly Payments INITIALLY**
Mortgage Type: ☐ Fixed Rate ☐ Adjustable Rate
Based on $ _____ , for _____ years,
at the following rate(s): _____ % _____ %
Principal and Interest _____ $ _____ $ _____

**Combined Total** _____ $ _____ $ _____
(Total of first & second mortgages)

If the interest rate is higher or lower than shown above, total monthly payments will be higher or lower. Consult the mortgage lender for more information about mortgage costs and terms.

### SUMMARY OF TOTAL MONIES NEEDED
Purchase Price _____ $    500,000.00
Estimated Costs (from left column, incl.)
MIP & VA Funding Fee, if any) _____ $      9,855.00
    **TOTAL CASH REQUIRED** (subtotal) $    509,855.00

Less Mortgage Amt. (including
    MIP & VA Funding Fee, if financed) _____ $ _____
Less Seller Assist and Credits (if any) _____ $ _____
Less Deposits (if any) _____ $     10,000.00
    **BALANCE DUE AT SETTLEMENT** $    499,855.00
NOTE: Fees from the left column paid before settlement will be subtracted from this amount.

\* Payment may be required before settlement
\*\* Maybe financed in mortgage amount
\*\*\* If Broker for Seller is or will be holding deposit money in this transaction, a Deposit Money Notice, such as PAR Form DMN, should be completed.

Buyer understands that the estimated costs are based on the best information available at this date and may be higher or lower at settlement.

BUYER *Thomas S Boland*                Thomas S Boland           DATE 09/20/2021
BUYER *Renee A Boland*                 Renee A Boland            DATE 09/20/2021
BUYER 9/20/2021 10:58:54 PM GMT                        Mary Jennifer Frattali    DATE 09/21/2021
BROKER (Company Name) CLASSIC PROPERTIES
PROVIDED BY (Licensee) *Margaret Hennen*                          DATE 9/21/21
                  Margaret Hennemuth

**Pennsylvania Association of REALTORS®**

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2015
8/15

CLASSIC PROPERTIES, 324 S. State St. Clarks Summit PA 18411        Phone: (570)587-7000      Fax: (570)586-8404      79 W Shore Dr/
Margaret Hennemuth                   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

AuthentiSign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482



# CONSUMER NOTICE
## THIS IS NOT A CONTRACT

In an effort to enable consumers of real estate services to make informed decisions about the business relationships they may have with real estate brokers and sales persons (licensees), the Real Estate Licensing and Registration Act (RELRA) requires that consumers be provided with this Notice at the initial interview.

- Licensees may enter into the following agency relationships with consumers:

*Seller Agent*

As a seller agent the licensee and the licensee's company works exclusively for the seller/landlord and must act in the seller's/landlord's best interest, including making a continuous and good faith effort to find a buyer/tenant except while the property is subject to an existing agreement. All confidential information relayed by the seller/landlord must be kept confidential except that a licensee must reveal known material defects about the property. A subagent has the same duties and obligations as the seller agent.

*Buyer Agent*

As a buyer agent, the licensee and the licensee's company work exclusively for the buyer/tenant even if paid by the seller/landlord. The buyer agent must act in the buyer/tenant's best interest, including making a continuous and good faith effort to find a property for the buyer/tenant, except while the buyer is subject to an existing contract, and must keep all confidential information, other than known material defects about the property, confidential.

*Dual Agent*

As a dual agent, the licensee works for *both* the seller/landlord and the buyer/tenant. A dual agent may not take any action that is adverse or detrimental to either party but must disclose known material defects about the property. A licensee must have the written consent of both parties before acting as a dual agent.

*Designated Agent*

As a designated agent, the broker of the selected real estate company designates certain licensees within the company to act exclusively as the seller/landlord agent and other licensees within the company to act exclusively as the buyer/tenant agent in the transaction. Because the broker supervises all of the licensees, the broker automatically serves as a dual agent. Each of the designated licensees are required to act in the applicable capacity explained previously. Additionally, the broker has the duty to take reasonable steps to assure that confidential information is not disclosed within the company.

- In addition, a licensee may serve as a Transaction Licensee.

A transaction licensee provides real estate services without having any agency relationship with a consumer. Although a transaction licensee has no duty of loyalty or confidentiality, a transaction licensee is prohibited from disclosing that:

- The seller will accept a price less than the asking/listing price,

- The buyer will pay a price greater than the price submitted in the written offer, and

- The seller or buyer will agree to financing terms other than those offered.

Like licensees in agency relationships, transaction licensees must disclose known material defects about the property.

12/08

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

- Regardless of the business relationship selected, all licensees owe consumers the duty to:
  - Exercise reasonable professional skill and care which meets the practice standards required by the RELRA.
  - Deal honestly and in good faith.
  - Present, as soon as practicable, all written offers, counteroffers, notices and communications to and from the parties. This duty may be waived *by* the seller *where* the seller's property is under contract and the waiver is in writing.
  - Comply with the Real Estate Seller Disclosure Law.
  - Account for escrow and deposit funds.
  - Disclose, as soon as practicable, all conflicts of interest and financial interests.
  - Provide assistance with document preparation and advise the consumer regarding compliance with laws pertaining to real estate transactions.
  - Advise the consumer to seek expert advice on matters about the transaction that are beyond the licensee's expertise.
  - Keep the consumer informed about the transaction and the tasks to be completed.
  - Disclose financial interest in a service, such as financial, title transfer and preparation services, insurance, construction, repair or inspection, at the time service is recommended or the first time the licensee learns that the service will be used.
- The following contractual terms are *negotiable* between the licensee and the consumer and must be addressed in an agreement/disclosure statement:
  - The duration of the licensee's employment, listing agreement or contract.
  - The licensee's fees or commission.
  - The scope of the licensee's activities or practices.
  - The broker's cooperation with and sharing of fees with other brokers.
- All sales agreements must contain the property's zoning classification except where the property is zoned solely or primarily to permit single family dwellings.
- The Real Estate Recovery Fund exists to reimburse any person who has obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

**Before you disclose any financial information to a licensee, be advised that unless you select a business relationship by signing a written agreement, the licensee is NOT representing you. A business relationship is NOT presumed.**

---

## ACKNOWLEDGMENT

I acknowledge that I have received this disclosure.

Date:  09/20/2021

_____ 09/21/2021

Thomas S Boland
(Consumer's Printed Name)

Thomas S Boland
9/20/ (Consumer's Signature)

Date:  09/20/2021

Renee A Boland
(Consumer's Printed Name)

Renee A Boland
9/20/ (Consumer's Signature)

I certify that I have provided this document to the above consumer during the initial interview.

Date:  9/20/21

Margaret Hennemuth
(Licensee's Printed Name)

Margaret Hennem (Licensee's Signature)

RS315158
(License#)

*Adopted by the State Real Estate Commission at 49 Pa. Code §35.336.*

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          79 W Shore Dr/

Authentisign ID: 95B0A1A2-33A9-4E88-95AF-5264E8DAD482

**DEPOSIT MONEY NOTICE TO BUYER (Prior to Delivery to Listing Broker)**   **DMN**
(For cooperative sales when Broker for Seller is holding deposit money)
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1  PROPERTY 79 W Shore Dr, Jefferson Twp,  18436
2  SELLER James J Kubasko Jr., By & Through his Guardian William R Hartzell
3  BUYER Thomas S Boland, Renee A Boland, Mary Jennifer Frattali
4  DATE OF AGREEMENT September 20, 2021
5  LISTING BROKER (BROKER FOR SELLER) CLASSIC PROPERTIES
6  SELLING BROKER CLASSIC PROPERTIES
7
8  1.  Listing Broker is a Pennsylvania licensed real estate broker who is required to hold your sales deposit in escrow.
9  2.  Selling Broker is accepting your deposit on behalf of and for transfer to the Listing Broker.
10 3.  If the deposit is in the form of a check, the check must be made payable to the Listing Broker.
11 4.  The Broker holding deposits will retain deposits in escrow until consummation or termination of the Agreement of Sale in con-
12     formity with all applicable laws and regulations.

13 BUYER *Thomas S Boland*                        DATE 09/20/2021
         Thomas S Boland
         9/20/2021 ... PM GMT

14 BUYER *Renee A Boland*                         DATE 09/20/2021
         Renee A Boland
         9/20/2021 ...23 PM GMT

15 BUYER                      DATE 09/21/2021
         Mary Jennifer Frattali
         9/21/2021 ... AM GMT

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2005
04/14

CLASSIC PROPERTIES, 324 S. State St. Clarks Summit PA 18411                    Phone: (570)587-7000        Fax: (570)586-8404        79 W Shore Dr/
Margaret Hennemuth                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com







Authentisign ID: 81EFB9C0-66A7-49F2-91C4-1B3B328B228F